**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER WASHINGTON-EL, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | No. 06-CV-4517 |
| vs. | : | |
| | : | |
| DAVID DIGUGLIELMO, MICHAEL | : | |
| LORENZO, JOHN MURRAY, | : | |
| A.S. WILLIAMSON, GARY | : | |
| OLINGER, and THOMAS DOHMAN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                                    **July 29, 2008**

Presently before this Court is Defendants' Second Motion for
Summary Judgment (Doc. No. 39) and Plaintiff's Response thereto
(Doc. No. 40).  Defendants move for Summary Judgment on
Plaintiff's First Amendment Claims of Denial of Free Exercise of
Religion (U.S. Const. amend. I), Denial of Access to Courts (U.S.
Const. amend. I) and Retaliation (U.S. Const. amend. I); his
Eighth Amendment Claim of Cruel and Unusual Punishment (U.S.
Const. amend. VIII); and his Fourteenth Amendment Claim of Denial
of Procedural Due Process (U.S. Const. amend. XIV, § 1).  For the
reasons below, the Court GRANTS IN PART and DENIES IN PART
Defendants' Motion for Summary Judgment.  Summary Judgment is
GRANTED and Judgment as a Matter of Law is ENTERED in favor of
Defendants with respect to Plaintiff's First Amendment Claims of

Denial of Access to Courts and Retaliation, Eighth Amendment
Claim of Cruel and Unusual Punishment, and Fourteenth Amendment
Claim of Denial of Procedural Due Process.  Summary Judgment is
DENIED with respect to Plaintiff's First Amendment Denial of Free
Exercise of Religion Claim.

## BACKGROUND

Plaintiff Mr. Christopher Washington-El, a state prisoner
acting as a pro se litigant, filed a civil rights action with
this Court on July 8, 2006 (Doc. No. 1), seeking damages under
Pennsylvania State Tort Law[1] and 42 U.S.C. § 1983 alleging
Retaliation and Denial of Free Exercise of Religion in violation
of the First Amendment, Cruel and Unusual punishment in violation
of the Eighth Amendment, and Deprivation of Procedural Due
Process in violation of the Fifth and Fourteenth Amendments.

On May 5, 2008, this Court denied Defendants' Mr. David
Diuglielmo, Mr. Michael Lorenzo, Mr. John Murray, Mr. A.S.
Williamson, Mr. Gary Olinger and Mr. Thomas Dohman's First Motion
for Summary Judgment, finding that there were numerous issues of
material fact underlying Plaintiff's claims in this case.  On
June 2, 2008, this Court granted Defendants' Motion for Leave to
File a Summary Judgment Motion on the Issue of Qualified
Immunity, which resulted in the motion currently before us.

---

[1]    Plaintiff's complaint does not proceed under a specific tort theory;
however, Plaintiff alleges false confinement and emotional injuries.

Plaintiff, represented by counsel, filed a response to Defendants' Motion, asserting that Defendants did not adequately address his claims in their Second Motion for Summary Judgment. Defendants' brief only addresses the issue of Plaintiff's transfer to administrative custody, though Plaintiff has asserted five claims under 42 U.S.C. § 1983.

On October 1, 2005 Plaintiff, while being kept in the general prison population, received a misconduct charge alleging that he was physically present in an unauthorized area. This charge was dismissed. In December of 2005, Defendant Dohman encountered Plaintiff and expressed dissatisfaction with the fact that Plaintiff was not found guilty of misconduct. During that same time period, Defendant Dohman received information that Plaintiff and several staff members were smuggling marijuana into the prison, and left Plaintiff in the general prison population in order to build a case against him and the other suspects.

On February 20, 2006, Plaintiff was ordered to be placed in the Restricted Housing Unit ("RHU") in administrative custody because Defendant Dohman determined that Plaintiff was involved in an incident resulting in injuries to another inmate. Plaintiff has presented numerous affidavits recording testimony of fellow inmates who claim that this allegation is false. Subsequent to Plaintiff's placement in administrative custody, Defendant Dohman received information that Plaintiff was planning

an escape and thus decided that he would remain in the RHU.
While there, Plaintiff received three meals a day, a shower three
times a week, exercise five days a week and access to a law
library.  He was reviewed by the Program Review Committee every
thirty days.   On June 13, 2007, Plaintiff was transferred to the
State Correctional Institution at Houzdale and placed in the
general prison population.

## DISCUSSION

### I.   *Legal Standards*

Summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  In reviewing a motion for summary
judgment, a court "must evaluate the evidence in the light most
favorable to the nonmoving party and draw all reasonable
inferences in the party's favor." <u>Sarmiento v. Montclair State
Univ.</u>, 2008 U.S. App. LEXIS 14175, at *5-6 (3d Cir. July 3, 2008)
(citations omitted).  "Judgment as a matter of law is appropriate
if, under the governing law, there is but one reasonable
conclusion as to the verdict." <u>Capilli v. Whitesell Constr. Co.</u>,
2008 U.S. App. LEXIS 6962, at *7 n.1 (3d Cir. Apr. 1, 2008)
(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250).
There must be more than a "mere scintilla" of evidence in support

of the non-moving party's position to survive the summary judgment stage.  <u>Anderson</u>, 477 U.S. at 252.

The objective qualified immunity standard applied to § 1983 claims inquires whether (1) a plaintiff has stated a violation of a constitutional or federal statutory right; and (2) if so, whether that right was clearly established, such that a reasonable official would understand that he was in violation of that right.  <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991); <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

## II.  *First Amendment Claims*

### A.  <u>*Denial of Free Exercise of Religion Claim*</u>

Plaintiff premises his First Amendment denial of free exercise of religion claim on deprivation of a copy of the Koran and denial of participation in Ramadan and of visits from a minister of his faith.

Though imprisonment does not automatically deprive a prisoner of First Amendment protections, inmates' rights may be more restricted than those of non-inmates, as long as the prison regulations that result in a narrowing of prisoners' constitutional rights are "reasonably related" to legitimate penological interests, and are not an "exaggerated response" to such objectives.  <u>Young v. Beard</u>, 2008 U.S. App. LEXIS 14315, at

*5 (3d Cir. July 8, 2008) (quoting Beard v. Banks, 548 U.S. 521, 126 S. Ct. 2572, 2577-78 (2006)).

In considering a First Amendment claim arising out of a non-traditional religious belief or practice, "courts have look[ed] to . . . familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same purposes, as unquestioned and accepted 'religions.'"  Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981) (citations omitted).  The Third Circuit drew on U.S. Supreme Court precedent to hold that the threshold requirements of a free exercise of religion claim are that the beliefs be (1) sincerely held and (2) religious in nature.  Meggett v. Pa. Dep't of Corr., 892 A.2d 872, 880 (Pa. Commw. 2006) (quoting Africa, 662 F.2d at 1030).  In order to establish a First Amendment free exercise claim after the threshold requirements are established:

> [A] prisoner must show that a prison policy or practice burdens his practice of religion by preventing him from engaging in conduct or having a religious experience which his faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. He must provide facts to show that the activities in which he wishes to engage are mandated by his religion.

Madison v. Horn, 1998 U.S. Dist. LEXIS 12975, at *24 (E.D. Pa. Aug. 21, 1998).

Once a plaintiff has demonstrated that a constitutionally protected interest is at stake, <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987), sets out a four factor test to determine the reasonableness of the regulation.  The <u>Turner</u> test requires a court to consider: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it, which connection must not be so remote as to render the policy arbitrary or irrational; (2) whether inmates retain alternative means of exercising the circumscribed right; (3) what costs accommodating the right would impose on other inmates, guards, and prison resources generally; and (4) whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  <u>Young</u>, 2008 U.S. App. LEXIS 14315, at *5-6.

In <u>Sutton v. Rasheed</u>, 323 F.3d 236, 254-255 (E.D. Pa. Mar. 19, 2003), this Court accepted undisputed expert witness testimony which stated that Nation of Islam books were "essential religious texts of the Nation of Islam."  The <u>Sutton</u> Court found that the only form of religious expression available to the plaintiffs was individual prayer in their cells, and that "[b]ecause they teach adherents the proper way to pray," the deprivation of Nation of Islam texts implicated the prisoners' ability to practice their religion in general.  <u>Id.</u> at 255.

Plaintiff has met the threshold requirements for a Free Exercise claim by demonstrating, through exhibits showing his contacts with his religious minister and his requests to participate in religious activities, that his beliefs are (1) sincerely held and (2) religious in nature.  Plaintiff claims that the Department of Corrections does not recognize the Moorish American Moslem faith.  Furthermore, Plaintiff claims that he was denied the right to participate in Ramadan, that no record evidence exists that he was allowed to retain in his confinement a copy of the Koran, and that he was denied visits from a minister of his faith.  We find that, because of its proximity to the traditional Muslim faith, the Moorish American Moslem faith qualifies as a religion for purposes of the First Amendment. Analogizing this case to <u>Sutton</u>, we find that the Koran is an "essential religious text" of Plaintiff's religion because it teaches him how to pray, and that it is a necessary text of his Moorish American Moslem faith.  Moreover, we find that Pennsylvania administrative custody regulations permit Holy Korans.  <u>Griffin v. Vaughn</u>, 112 F.3d 703, 707 (1997).  Given the foregoing discussion, Plaintiff has alleged facts sufficient to survive a Motion for Summary Judgment on his First Amendment Free Exercise claim.

Because Defendants' Second Motion for Summary Judgment does not raise the defense of qualified immunity specifically to

Plaintiff's free exercise claim, we do not have sufficient facts
to evaluate Defendants' qualified immunity defense with respect
to that claim.  However, we do find that the _Turner_ test is
clearly established law of which reasonable officials should have
been aware, and that, given the deprivations complained of,
Plaintiff did not retain any alternative means of exercising his
religious rights.  Refused the right to participate in Ramadan,
to retain a copy of the Koran necessary for prayer, and to
receive visits from a minister of his faith, we are not persuaded
that Plaintiff was left a viable alternate way to practice his
religion.  Given the foregoing discussion, we DENY Defendants'
Motion with respect to Plaintiff's First Amendment free exercise
claim.

>    B.   _Retaliation Claim_

Plaintiff premises his First Amendment retaliation claim on
Defendant Dohman's dissatisfaction with the outcome of
Plaintiff's misconduct report and his subsequent order that
Plaintiff be placed in the RHU in administrative custody.

The Third Circuit has established a three-part test for
determining whether a prisoner-plaintiff has stated a claim of
retaliation.  The prisoner-plaintiff must prove: (1) that the
conduct which led to the alleged retaliation was constitutionally
protected; (2) that he suffered some adverse action at the hands
of prison officials; and (3) that his constitutionally protected

conduct was a substantial or motivating factor in the decision to discipline him. Rauser v. Horn, 241 F.3d 330, 333-334 (3d Cir. 2001). "Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Plaintiff alleges facts sufficient to satisfy prongs (1) and (2) of the retaliation claim in alleging that he (1) successfully defended himself against charges of misconduct and filed grievances against prison officials and (2) that he was sent to administrative custody. However, with respect to prong (3), he weakly alleges that "he was placed in [administrative custody] because of Dohman's displeasure with the outcome of various misconduct and grievances." (Pl. Resp. at 13). Plaintiff's evidence, consisting of his own account of Dohman's displeasure and of affidavits of fellow prisoners, is weak and we are not persuaded that he has satisfied the elements necessary to sustain a retaliation claim. Moreover, decisions regarding Plaintiff's placement in administrative custody were reviewed by multiple prison officials, and thus were not made exclusively by Defendant Dohman. Defendants claim that Plaintiff was placed in administrative custody because he was involved in altercations

with other inmates and because he was allegedly planning an escape.  We find these reasons to be reasonably related to a legitimate penological interest.  Because we do not find that Plaintiff has stated a violation of a clearly established constitutional right, we need not reach the second step of the qualified immunity analysis with respect to Plaintiff's First Amendment retaliation claim.  See Siegert, 500 U.S. 226 at 232; Anderson, 483 U.S. at 640.  We therefore GRANT Defendants' motion with respect to this claim.

   C. *Denial of Access to Courts Claim*

   Plaintiff premises his First Amendment denial of access to courts claim on his deprivation of legal materials and contact information, and the denial of his right to challenge his transfer to the RHU.

   To state a claim for denial of access to courts, an inmate must demonstrate actual injury by showing that alleged shortcomings in library or legal assistance programs hindered his efforts to pursue a nonfrivolous legal claim.  See Lewis v. Casey, 518 U.S. 343, 348-49 (1996); Adegbuji v. Green, 2008 U.S. App. LEXIS 10740, at *4-5 (3d Cir. Apr. 28, 2008).

   Plaintiff's deposition indicates that he had the opportunity to go to the law library.  (Pl. Dep. at 28-29).  His testimony further indicates that, though phone books and legal materials were confiscated from his cell, he eventually obtained the

information he sought from the phone books and his request for an official phone book while in the RHU was granted. (Pl. Dep. at 36-37). The volume of Plaintiff's filings with this Court further shows that he had ample opportunity to consult legal materials, to confer with counsel and to draft motions both as a pro se litigant and as a litigant represented by counsel.

Because we do not find that Plaintiff has stated a violation of a clearly established constitutional right, we need not reach the second step of the qualified immunity analysis with respect to this claim. See Siegert, 500 U.S. 226 at 232; Anderson, 483 U.S. at 640. We therefore GRANT Defendants' motion with respect to Plaintiff's First Amendment Denial of Access to Courts Claim.

### III. Eighth Amendment Cruel and Unusual Punishment Claim

Plaintiff premises his Eighth Amendment cruel and unusual punishment claim on the fact that he was forced to wear the same jumpsuit for approximately four months and that human feces were habitually located in the showers and other areas of the prison.

"The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). In order to prove a violation of the Eighth Amendment, "an inmate must show that he has been deprived of the minimal civilized measure of life's necessities." Id. (citations omitted). This burden includes

proving that the "deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." Id. Because the Eighth Amendment bans only cruel and unusual *punishment*, "[i]f the pain inflicted is not formally meted out as *punishment* by the statute or sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." Young v. Quinlan, 960 F.2d 351, 360 (3d Cir. 1992) (emphasis in original).

"There is no absolute constitutional standard for how often prisoners must be given new clothing." Tinsley v. Vaughn, 1991 U.S. Dist. LEXIS 7364, at *15 (E.D. Pa. May 29, 1991). Sufficient evidence to constitute cruel and unusual punishment may exist, for example, where prison officials' unjustifiably withhold clothing to punish inmates. Id. "Deficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment[;]" however, "the prison environment itself may not be so brutal or unhealthy as to be in itself a punishment." Young, 960 F.2d at 359.

Plaintiff's Eighth Amendment claim is premised on the alleged fact that he was forced to wear the same jumpsuit for a period of approximately four months, and that he was subjected to unsanitary conditions "wherein he was forced to reside in an area where human feces were habitually located in the shower and other areas." (Pl. Resp. at 21). The transcript of Plaintiff's

deposition indicates that he was given clean t-shirts and underwear, as well as the opportunity to wash the t-shirts and underwear.  (Pl. Dep. at 40).  Plaintiff presents no evidence to indicate that he was denied the opportunity to wash his jumpsuit. Moreover, Plaintiff has not alleged that his clothing or the human feces he saw in the shower and other areas effected a deprivation of "the minimal civilized measure of life's necessities," or that prison officials acted with "deliberate indifference" in subjecting Plaintiff to those situations. Griffin, 112 F.3d at 709.

We do not find that Plaintiff has alleged facts sufficient to establish cruel and unusual punishment in violation of the Eighth Amendment, and thus we need not reach the second step of the qualified immunity analysis with respect to this claim.  See Siegert, 500 U.S. 226 at 232; Anderson, 483 U.S. at 640.  We therefore GRANT Defendants' motion with respect to Plaintiff's Eighth Amendment claim.

## IV.  *Fourteenth Amendment Procedural Due Process Claims*

Plaintiff premises his Fourteenth Amendment procedural due process claim on allegations that the procedures used to reach the decision to place him in administrative custody were false, that Defendants did not disclose to Plaintiff or Plaintiff's counsel the true reasons for Plaintiff's solitary detention, that he was denied the right to be heard on the true reasons for his

confinement, and that he was denied state-created rights and privileges when he was denied participation in educational programs.  In his Complaint, Plaintiff premises his denial of privileges or rights allowed to him by state law or regulations on Defendants' alleged failure to follow state law and the procedures laid out in the DOC ADM-802 policy (Pl. Compl. at 13).

Addressing the issue of procedural due process in the prison context, the Supreme Court has concluded:

> We recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Griffin v. Vaughn, 112 F.3d 703, 705-706 (3d Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 2300 (1995)). "[T]he baseline for determining what is 'atypical and significant' . . . is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin, 112 F.3d at 706.  This is a fact-sensitive inquiry, and the Sandin Court carefully compared the circumstances of the prisoner's confinement with those of other inmates.  Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. Jan. 29, 2003).  The Supreme Court concluded in Sandin, "discipline by prison officials in response

to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." 115 S. Ct. at 2301.  Furthermore, this Court has concluded, "filing a false or unfounded misconduct charge against an inmate does not constitute deprivation of a constitutional right." Gay v. Shannon, 2005 U.S. Dist. LEXIS 43705, at *18 (E.D. Pa. Mar. 2, 2005).  A prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct even if it results in the deprivation of a protected liberty interest." Id.

Plaintiff's deposition indicates that he saw the Prison Review Committee approximately every 30 days while he was in the RHU, and that he was given several reasons for his placement in administrative custody.  (Pl. Dep. at 28-29, 40-41).  His deposition further shows that Plaintiff was convicted of third degree homicide and sentenced to twelve-and-a-half to twenty-five years in prison, that Plaintiff was approaching his thirteenth year in prison, and therefore that Plaintiff's approximately seventeen months in administrative custody fell within his prison sentence.  Plaintiff has not alleged facts sufficient to show that his treatment, including the denial of his right to participate in educational programming, departed significantly from that of other inmates.  He has thus failed to demonstrate that the circumstances of his placement in administrative custody were "atypical and significant" as compared to the treatment

which an inmate in Plaintiff's position "may reasonably expect to encounter as a result of his . . . conviction in accordance with due process of law."  <u>Griffin</u>, 112 F.3d at 706.  Plaintiff therefore does not successfully allege a denial of procedural due process.

Plaintiff's claim that he was denied privileges or rights allowed to him by state law or regulations is premised on Defendants' alleged failure to follow state law[2] and the procedures laid out in the DOC ADM-802 policy (Pl. Compl. at 13). The Supreme Court in <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), examined "the possibility that the State had created a liberty interest by virtue of its prison regulations," finding that the mandatory directives in the prison regulations before it had created a protected liberty interest.  <u>Sandin</u>, 115 S.Ct. 2293, 2298 (quoting <u>Hewitt</u>, 459 U.S. at 471-72 (1983)).  The <u>Hewitt</u> court found that these regulations mandated that an incursion on liberty could not occur "absent specified substantive predicates."  <u>Id.</u>  However, the Supreme Court in <u>Sandin</u> abandoned this methodology, shifting the focus of the liberty interest to the nature of the alleged deprivation, rather than to the mandatory language in prison regulations.  515 U.S. at 484 n. 5. The Third Circuit has explicitly rejected the notion that state regulations and rules give rise to "a liberty interest in having

---

[2]    Plaintiff's complaint does not proceed under a specific tort theory; however, Plaintiff alleges false confinement and emotional injuries.

certain state mandated procedures followed." Dantzler v. Beard, 2007 U.S. Dist. LEXIS 96919, at *17-18, n. 7 (W.D. Pa. Dec. 6, 2007).  Therefore, Sandin also applies to Plaintiff's claim of denial of state privileges or rights.  Plaintiff again fails to allege fact sufficient to show that Defendants' alleged failure to follow the state laws and regulations pointed to was "atypical and significant" as compared to the treatment which an inmate in Plaintiff's position "may reasonably expect to encounter as a result of his . . . conviction in accordance with due process of law." Griffin, 112 F.3d at 706.  Plaintiff therefore does not successfully allege a denial of procedural due process under any of the foregoing theories.

Given the above discussion, we do not find that Plaintiff has stated a violation of a clearly established constitutional right with respect to his Fourteenth Amendment denial of procedural due process claim.  Siegert, 500 U.S. 226 at 232.  We thus need not reach the second step of the qualified immunity analysis with respect to this claim.  See Siegert, 500 U.S. 226 at 232; Anderson, 483 U.S. at 640.  We therefore GRANT Defendants' motion with respect to Plaintiff's Fourteenth Amendment claim.

## V.   *Conclusion*

In their Second Motion for Summary Judgment, Defendants

raise only the issue of qualified immunity.  We do not find that Plaintiff satisfies the threshold issue of stating a violation of a constitutional or statutory right with respect to his First Amendment Claims of Denial of Access to Courts and Retaliation, his Eighth Amendment Claim of Cruel and Unusual Punishment, and his Fourteenth Amendment Claim of Denial of Procedural Due Process because he does not establish a viable cause of action under any of these theories.  Therefore, we need not reach the second step of the qualified immunity analysis and we GRANT Defendants' motion with respect to these claims.

Plaintiff does establish facts sufficient to survive a Motion for Summary Judgment on his First Amendment Denial of Free Exercise of Religion Claim.  Because Defendants' Second Motion for Summary Judgment does not raise the defense of qualified immunity specifically with regard to Plaintiff's Free Exercise Claim, we do not have sufficient facts to evaluate Defendants' qualified immunity defense with respect to that claim and we therefore DENY Defendants' Motion for Summary Judgment with respect to Plaintiff's Free Exercise Claim.

An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER WASHINGTON-EL,        :        CIVIL ACTION
                                  :
                Plaintiff,        :
                                  :        No. 06-CV-4517
        vs.                       :
                                  :
DAVID DIGUGLIELMO, MICHAEL        :
LORENZO, JOHN MURRAY,             :
A.S. WILLIAMSON,                  :
GARY OLINGER, and                 :
THOMAS DOHMAN,                    :
                                  :
                Defendants.       :

**<u>ORDER</u>**

AND NOW, on this 29th day of July, 2008, upon consideration of Defendants' Second Motion for Summary Judgment (Doc. No. 39) and Plaintiff's Response thereto (Doc. No. 40), it is hereby ordered that the Motion is GRANTED IN PART and DENIED IN PART, Summary Judgment is GRANTED and Judgment as a Matter of Law is ENTERED in favor of Defendants with respect to Plaintiff's First Amendment Claims of Denial of Access to Courts and Retaliation, Eighth Amendment Claim of Cruel and Unusual Punishment, and Fourteenth Amendment Claim of Denial of Procedural Due Process.

IT IS FURTHER ORDERED that Summary Judgment is DENIED with respect to Plaintiff's First Amendment Denial of Free Exercise of Religion Claim.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.